Case number 15-3084, United States of America v. Devon Cleveland Hunt, also known as Man Appellant. Mr. Sussman for the appellant, Mr. Feldman for the appellate. Good morning, Mr. Sussman. Under the heading of first things first, I guess I have to deal with the question of why does my client have the right to appeal in this particular case? And we turn first to the plea agreement and make the same kind of analysis that I believe a panel made last week or the week before in which you participated in. And it's looking first at the plain language of the appellate waiver contained in the plea agreement, which says that there's a waiver of right to appeal the sentence, including any term of imprisonment, fine, forfeiture, award, or term of supervised release. Now, if I recall the grammar I learned, there's what we call parallel structure there. Term of imprisonment clearly is a temporal term relating to the amount of imprisonment. We're not talking about hard labor. We're not talking about anything but the length of imprisonment. And I would submit that the use of the word term of supervised release in this particular case applies to the length of supervised release. The court will note that in a drug case, as this was, the term of supervised release is up to life. There are guidelines on it, but it is statutorily up to life. So the question about the term of supervised release is – Mr. Sussman, what page are you on? JA-37. Thank you, sir. How about setting the conditions of release? It's up in the office. So, Mr. Sussman, the client agrees to waive the right to appeal without any conditions, just the right to appeal, including all of those enumerated elements. So why – how does your argument get you there if the waiver is a blanket waiver and then the enumerated terms are including but presumably not limited to? Well, I would argue that if it was a blanket waiver, there's no need to explain the secondary nature of what you're waiving. I mean, this is a fairly – to a criminal defendant, this is a fairly arcane kind of waiver. He well understands in this 11C1C plea that the term of imprisonment is not to be disputed. But in terms of the foreseeability or the understanding of any particular defendant, I think this is designed to clarify that. And the clarification is inherently ambiguous as to what exactly is he waiving. The answer to Judge Henderson's – What about – yeah, go ahead. The authority is – are you saying that you're waiving the authority but not – the language waives the authority waives the – You asked about conditions of release. Was that – Right. I think conditions of release pertain, and in terms of the normal usage of that term, conditions of release, it relates to bail conditions because conditions of release is not really what we use. It's a common phrase that's used as to bail, and bail is an open question. You mean bail on appeal or what? Well, you can – Okay. I mean, but this is, again, the right to appeal the sentence including and coming right after the term of supervised release and to set the conditions of release. Do you think because they dropped the word supervised that doesn't – I would argue that. Oh, okay. I would argue because there is something called conditions of release. It's the more common terminology for conditions of release is bail, which is – Well, we see cases of all kinds of conditions on them, not unlike the one here, the geographical limitation. Well, that's a separate question. Sex offender registry, I mean, any number of things. In terms of what do we mean by conditions of release, it's a broad array of things. Well, then the court is making the point or expressing the belief that conditions of release relate to supervised release and not necessarily – why would you have to say it twice? Why would you have to say it twice if related to the same thing? Because one, as you pointed out, goes to the length of the supervised release. The second goes to the conditions. Well, then I would argue that there's a second ambiguity because the question of bond and question of condition of release is up for grabs in terms of any plea. The judge has plenary authority to set conditions of release. Do you have – I know this wasn't briefed by either side, this phrase, authority of the court to set conditions of release. Why authority here and not authority with respect to the other listed items? I'm not sure what your answer is. Including any term of imprisonment, fine, forfeiture, award of restitution, term of supervised release. And it doesn't say condition of release. It says authority of the court to set conditions of release. Why isn't it authority of the court to set a term of imprisonment, fine, forfeiture? Well, I think it's a good question. Obviously, these are drafted by the government. We see one after another. It will ask the government also. So I think that that's a better question for Mr. Hellman to be answering. I don't know why the language was used. I just argue that the interpretation of the language is such that it is ambiguous and that I would think the more likely way to interpret it is that the term of supervised release relates to time. The court has vast discretion with regard to the amount of time that can be imposed in a drug case such as this. And I would think that terms of supervised release would be the applicable phrase if I was talking about the actual conditions of supervision. And you had other arguments about the appeal waiver stemming from the colloquy? Well, there was something actually the government brought up. And I don't think that's my best argument, to be honest. I think that there is some question about the court spoke, I think, incorrectly and then corrected itself. There was some inherent ambiguity in what the court told Mr. Hunt. And I think that probably is additive to the inherent ambiguity in the document. I mean, the judge didn't help Mr. Hunt by virtue of explaining. But let me point out, this was not one of the standard conditions of probation or of supervised release. This was a special condition that was urged upon the court at the last moment by the government in its sentencing memorandum. So this was an unanticipated kind of condition in terms of what one normally would think to be the standard terms of supervision. This came out of the blue. I mean, it could have carried to extreme. The government could have asked that in order to cut crime in the District of Columbia, all persons on supervised release reside outside of the District of Columbia and not enter the District of Columbia. Well, let me ask you about coming out of the blue. You argue in the gray brief that there was no, absolutely no indication of this condition would be imposed prior to the sentencing hearing itself. But the government in the sentencing memorandum that it filed 10 days before the hearing requested this specifically. It was in the memorandum, clearly. And if I said that, then I misspoke or misread. I don't recall the memorandum coming in that far in advance. If that's what the docket says, that's what the docket said. But in terms of, it was a novel, to my experience at least, it was a very novel condition. I have not seen that condition anecdotally in any case that I've tried or been involved in a sentencing hearing. Mr. Sussman, considering the, it's not clear that we reach it, but considering the condition that was imposed, one of the things that wasn't entirely clear to me from the record was the relationship of Mr. Hunt to this neighborhood. It appears that he did not personally reside there. At the time of the offense, I do not believe he personally resided there. He had a long history with that neighborhood, some of it not particularly to his credit. Those were the kinds of statements that your briefing set forward, was that he had connection, been a member of the community. But the government says he maintained an apartment for the sole purpose of distributing heroin, and you don't point to anything in the record, or you also in your briefing don't actually dispute that. I mean, it would make potentially a difference if that were his home, but we don't have any record basis to believe that it is his home. Right. Isn't there an indication that he actually did have a home somewhere else? That's right. I did say that in the brief because there was a home that was searched in Maryland as part of the investigation, and I thought it was appropriate to put that in in fairness that there was questions about residence. He had had a long attachment to the neighborhood. The government would maintain that it was a criminal attachment, but as the court is probably well aware, Potomac Gardens is a large housing unit of multi-hundreds of units, and he and family members had to live there, it was my understanding, at some point along the line. Toward that end, I would point out that the general conditions of probation, of supervised release, preclude you from selling drugs or committing crime. So I didn't see why the geographical boundaries of that really change anything, and they seem to be unnecessary. I think my time has run down and no further questions. Okay. We'll give you a couple of minutes in reply. Thank you. Thank you. Mr. Feldman? Mr. Feldman? Good morning. Jason Feldman for FLE United States. Your Honors, I'd like to start at the same place Mr. Sussman started, which is the waiver issue. It's the government's position, just as Your Honor pointed out in questioning Mr. Sussman, that the waiver is phrased in a way where the first clause is the operative clause. It states that defendant agrees to waive his right to appeal the sentence in this case. And everything that follows after that are illustrative examples. And those examples are included by the government in an effort to provide the defendant with as much notice, as much context and examples as possible, about the rights that the defendant would be waiving by entering into the Rule 11C1C. But Mr. Feldman, Mr. Sussman also makes a good point, which is if all you needed to say was zero, you have no right to appeal, then there wouldn't be the elaborating follow-on clauses. And as we know, there are certain limited rights to appeal, notwithstanding an appeal waiver. And the difficulty I think we have is that term of imprisonment followed by term of supervised release does naturally imply what Mr. Sussman said it does, which is the length of the time that you're being subject to supervised release. And then we have this somewhat strange phrase about the authority of the court to set conditions. Why is that phrase differently? What does that mean by the authority of the court? And, Your Honor, I'll address both points in turn. The first is regarding term of imprisonment and term of condition of supervised release. When we're talking about imprisonment, there are not a lot of conditions on imprisonment. Imprisonment is imprisonment and the length of time that you are incarcerated for. Supervised release is different from imprisonment with respect to the fact that it inherently includes all sorts of conditions, and that's why it's supervised release, reporting conditions, drug testing conditions, stay-away conditions. I understand that it's susceptible of being read the way that you propose it be read, but it also is quite naturally read the other way. And this is a very grave thing for someone to be asked, someone who's not a lawyer and whose liberty is on the line, is being asked to waive something that is future and conjectural. It's very hard to grasp the nature of what's being waived. And I'm just a little surprised that the government hasn't been able to be clearer and hasn't been more vigilant in policing the clarity of the terms that it puts down. Do you have any theory of what it means and why this would refer to the authority of the court? Yes, Your Honor. In talking to my colleague during the argument for Mr. Sussman, we think, and we can clarify this after the argument, we're happy to do so, but we believe that that phrase stems from one of this court's decisions, and we think that that decision is the Melania decision that had to do with whether the court had authority or whether in a local, the charge in that case actually that was tried by a federal court was a D.C. Superior Court charge. And in Superior Court, the probation office is the office that sets conditions of release, not the court. And so we believe that, and I think that's an important point, because the court brought up the fact that maybe the waiver would be clearer if it was shorter, and maybe it would be. But I think what the length of this waiver, the reason it's so long, is because in response to different examples and different cases from this court where the court has held that the waiver is not clear, what the government strives to do is to provide defendants for the exact reasons Your Honor mentioned, with as much notice as possible about the types of rights that they would be waiving. And it's very difficult to provide every single example that could possibly come up. Right. No, I understand there's some drafting challenges, and also given that it isn't, and I don't think can really be done through one blanket stroke because there are some kinds of appeals that are retained, that is a challenge. But I would emphasize how important it is to try to get that right. And then we have the district court, an open court, saying you may also have a right to appeal or challenge your sentence or conviction if you think the sentence is illegal, or if it exceeds the applicable guideline range, or results from ineffective assistance. So we have additional ambiguity that the government did not correct. And when the judge came back around and said you're giving up your right to challenge a sentence, he didn't say, oh, I misspoke before. This is the one you should listen to. And so the question, I think, for us is why, given really two sources of ambiguity, why we would enforce the appeal waiver given that the government does have the drafting pen and the stakes of this kind of waiver. And I understand that certainly there were these two competing explanations of the waiver, one correct and one incorrect. And the government does not dispute that that does inject at least some sort of ambiguity, as the court notes. We would just point the court, again, to comparing the Kauffman case, where a very similar misstatement was made to the misstatement here, but there were actually two misstatements in Kauffman. And so the only explanation the court gave regarding the waiver provision in that case was wrong. In this case, you had the misstatement, and then you had a correct statement of the waiver. And I would agree with Your Honor that the court didn't expressly go back and correct the record and note that its prior explanation was incorrect. And in Guillen, I think this case sort of straddles between Kauffman and Guillen. In Guillen, we had a similar situation to the issue here, where you have a misstatement and then a subsequent correct explanation. And the court in Guillen, it seems like from the record, and actually Your Honor wrote that opinion, it seems like from the record that the court did, in fact, in Guillen, go back and correct its misstatement. But what the government's arguing is that the reason the waiver is valid in this case is because the final word on the waiver was correct. Appellant indicated in response to the court's colloquy that he understood. And therefore, appellant, unlike the defendant. But the question is, what's the object of that understanding? You know, I understand what you said. I heard, if I think the sentence is illegal, I can appeal. Okay. Done. I think we also said in Kauffman that it is up to the prosecution when the court says something that injects ambiguity. You need to protect your convictions and your pleas. And you're sitting right there. And when you hear, if you think the sentence is illegal, you can appeal. Excuse me, Your Honor, perhaps that was infelicitous. Can we have a clarifying statement for the benefit of the defendant? We did say that in Kauffman, and I reiterate that today. Understood, Your Honor. And I would just note that even if the court declines to enforce the waiver, we feel that we have a very good argument in this case on the merits. Before you get to the merits, how do you read the language in the waiver that hasn't been commented on in the last, and the manner in which the sentence is determined? Is that sweeping in the explanation? What do you think that means? We would read that as determining how the court, as an example, we would read that as precluding the defendant for challenging how the court calculated the guidelines in the case or appeals such as that. That's how we would read that. How about a failure to explain a sentence? That's certainly another interpretation that I think is that that phrase is susceptible to. Okay. With respect to the merits, I'd just like to – Excuse me one second. Is the use of – is the second sentence in the – under appeal rights, it's 37. The client agrees to waive the right to appeal, et cetera. Is that standard? Is it standard in rule? In your office. My understanding is, at least for plea agreements, it is standard language in exchange for the concessions that the government gives up in a plea agreement. Standard language uses the word term according to your interpretation. My understanding is – It uses it twice and gives it different meanings. I understand the court's point. I think – Now, unless you have an A grade from the defendant's grammar course in school, I don't know how one can say that that gives adequate notice to – It's just – it's tricky. It is – I don't mean to say it's intended to be a trick. I think this would be tricky to – there'd be a chance as to whether one got the right – your understanding from reading this. I think – It's like going to a – if I go to a movie in French, you know, I think I understand a lot of it. But I may not. Sometimes I get a bit surprised later on with what happens. And I understand the court's point. And in hindsight, looking at the waiver in the context of this particular appeal, there's no question that the waiver could be written in a clearer manner to correct it. It's true in any appeal. If this is standard language, to use the same word with two different meanings and adjoining clauses on the same sentence, I think you've got to strongly recommend a change. I will pass that message on to the office, Your Honor. I would also note that Section 3742, which is also specifically cited in the waiver, does discuss conditions of supervised release in that statute. And that is encompassed within the language of the waiver. Your Honor, with respect to the merits, and I know Mr. Sussman discussed the reasonableness of the condition, so unless the court has questions about the procedural merits, I'm going to confine my comments on the merits of this substantive claim. I did have a question on the procedural side. As I understand it, this would be under plenary review, and some courts would see this kind of procedural claim to failure to fully articulate the reason for the condition to be harmless. Others would say, well, maybe not subject to that, but if it can be gleaned from the record what the reasoning was. And here, the only reasoning given for this condition was stated by the prosecution. The district judge made zero comment on why this condition was being adopted. Is that zero comment enough? Well, I think the district judge, it's correct to say that the district judge did not specifically connect its reasoning that it gave for appellant sentence to the condition of supervised release. But I think that its reasoning regarding why it imposed appellant sentence applied equally to why it imposed the condition of supervised release. And I would also note that when the court was articulating the condition of supervised release, just moments before, there had been an extended argument between the government counsel and defense counsel regarding the propriety, the reasonableness, the overbreath or lack of overbreath of this special condition. If the court had simply said that it's imposing the special condition for the reason stated by the government, that would have been better for the court to say that. I don't think we would have been here if it had said that. But certainly, I think based on the extended argument regarding the condition in the sentencing transcript, the PSR, Appellant's History of Committing Crimes in this Community, which is extensive, as well as the government's 404B motion, which was also in the record, the government's sentencing memorandum, which mentioned its request for the condition of supervised release, all of that record information provided ample basis for the court to impose this condition. So there's a record basis. And in your view, where there's a record basis and the court doesn't incorporate it by reference or refer to it at all, when we're on plenary review, that suffices? I think that is the government's position. It's also the court has held that in Sullivan, which is cited in our brief, where in that case it was a very brief description analysis of the condition. It was on plenary review, or of the claim. It was on plenary review. But the court rejected defendant's claim in that case that the district judge failed to, quote, substantiate the conditions of supervised release. And the court said in that case that that didn't arise to the level of plain error. So given that precedent, as well as in this case, this condition was not an off-the-wall condition that the court has to search the record for why it was imposed. As just using an analogy, if a defendant has been testing positive throughout pretrial, awaiting his trial for narcotics, you know, a court, to say that a court would have to say, I'm ordering drug testing as a condition of supervised release because you've tested positive several times. I think that this condition is akin to that. It was that obvious from the record about why it was imposed. If there are no more questions, the government would ask the court to affirm the sentence in this case. I just had one question, which is, typically drug dealers do operate in a particular vicinity. And could you help me distinguish why this special condition, if there's anything in the record that helps us understand why this special condition is warranted in this case and it's being warranted here, does not make it equally warranted in every single case? I think the answer to the court's question really lies in this particular defendant's history of committing crimes in this location since he was 18 years old. You have an attempted possession of heroin charge conviction in 1998. You have a simple assault in 1990. You have a 1997 conspiracy to distribute heroin conviction. And then you have the factual proffer in this case in which he pled guilty and admitted and acknowledged that he maintained an apartment in Potomac Gardens for the sole purpose of distributing heroin. And the court noted that… You can go back farther. In 1987, he conducted at least three heroin deals. And in 1990, he was convicted of assaulting police officers there. In 1994, he participated in at least 75 more heroin deals at Potomac Gardens. The judge was saying, stay out of your base of drug operations during your term of supervised release. I agree with the court's assessment. Also, I would note that… I'm surprised. I'm sorry? It's hardly surprising you agree with that. I would also note that the condition, it's not an absolute banishment from Potomac Gardens. It's tempered by a phrase allowing appellant to enter Potomac Gardens if he obtains the permission of his probation officer, which makes the condition reasonable, even more reasonable. And in response to the court's point in questioning Mr. Sussman, appellant doesn't live in Potomac Gardens. He lives in Temple Hills, Maryland. And so this is not requiring appellant to find a completely different location, move his address upon getting out of prison. This is simply requiring him to stay away from a community where he has committed crimes since he was a very young man. And it's not just for the community's benefit. It's also for appellant's benefit. And I think the Watson case that I cited in the brief makes that point. Removing a person from negative influences in their life has a positive effect on their own rehabilitation. And seeing there are no more questions, we'd ask the Court to affirm the sentence in its entirety, including the stay-away condition. Thank you. Does Mr. Sussman have any time? Okay. Do you want to take a minute? Briefly, one of the last things that Mr. Feldman mentioned, I think it was in response to Judge Millard's question. The question of plain error is a failure to require the judge to make an explanation of his findings. Now, from the trenches, I disagree with the Court's holding with regard to that because it's just not realistic. But that's another question. But the government has the same ability. We vehemently litigated the question of whether the condition should be imposed. And the government, now that she was on the other foot, the judge failed to make any findings whatsoever, and the government took no action to correct that. So I don't think the government can claim that the defense is placed on a plain error standard and not suffer any loss by their failure as well. Thank you. Okay. Mr. Sussman, you were appointed by the Court to represent your client. And once again, we thank you for your assistance. Thank you. All right. Okay.
judges: Henderson, Pillard, Ginsburg